Lewis MAGRUDER *v.* ARKANSAS GAME & FISH
COMMISSION

87-63                                    732 S.W.2d 849

Supreme Court of Arkansas
Opinion delivered July 13, 1987
[Rehearing denied September 14, 1987.*]

*Smith, Smith & Duke,* by: *Griffin Smith,* for appellant.

*P. Douglas Mays,* General Counsel for the Arkansas Game
& Fish Commission; and *Howell, Price, Trice, Basham and
Hope, P.A.,* by: *Robert J. Price,* for appellee.

DAVID NEWBERN, Justice. The question presented in this
appeal is whether the appellee, Arkansas Game and Fish Com-
mission, acted unconstitutionally by declaring Lake Maumelle to
be a "zone," as that term is used in Ark. Const. art. 35, § 8, for the
purpose of regulating fishing in the lake. We disagree with the
chancellor's conclusion to the extent he said that the commission
could regulate the lake as it pleased because its authority was
derived from its contract with the Little Rock Waterworks
pursuant to which the commission managed the lake. However,
we affirm the result and hold that it was not an unconstitutional or
otherwise improper use of the commission's authority to make
one lake a zone for the purpose of regulating the fishing there.

*Hickman, J., would grant rehearing. Purtle, J., not participating.

The commission issued a regulation saying that black bass under fifteen inches long could not be taken from the lake. In an earlier action, the appellant challenged the regulation, and the chancellor ruled the regulation was violative of Ark. Const. art. 35, § 8, which provides:

> The Commission shall have the exclusive power and authority to issue licenses and permits, to regulate bag limits and the manner of taking game and fish and furbearing animals, and shall have the authority to divide the State into zones, and regulate seasons and manner of taking game, and fish and furbearing animals therein, and fix penalties for violations. No rule or regulations shall apply to less than a complete zone, except temporarily in case of extreme emergency.

Thereafter, the commission issued a minute order making every identifiable body of water a separate zone.

Next, the appellant challenged the commission's action in making each body of water a zone. The chancellor held that the appellant lacked standing to bring the challenge. This court reversed. *Magruder* v. *Arkansas Game & Fish Commission*, 287 Ark. 343, 698 S.W.2d 299 (1985). Upon remand, the chancellor upheld the commission's action, stating in his order:

> That the Arkansas Game and Fish Commission has constitutional authority pursuant to Amendment 35 . . . to regulate animal and fisheries resources, as well as statutory and contractual authority in this limited fact situation, and no vested property right exists in the Arkansas Game & Fish Commission for this particular lake, . . . .

The chancellor relied on Ark. Stat. Ann. § 19-4223 (Repl. 1980) which gives waterworks commissioners authority to manage municipally-owned waterworks, and Ark. Stat. Ann. § 19-4232 (Repl. 1980) which provides that if waterworks commissioners choose to allow fishing on their premises the game and fish commission regulations on fishing will be in effect and "may not be abrogated by the rules and regulations of the operating authority." His conclusion seemed to be that regardless of Amendment 35, the commission had authority to regulate the

lake because the waterworks commissioners had conferred their management authority upon the game and fish commission.

## 1. The commission's authority

The appellant's position is that the commission has no authority to make a lake a zone. He states the order making each body of water a zone "does not 'divide the state into zones' " as the amendment requires. He cites no authority for that statement. He does, however, discuss the history of the amendment, and he cites *Arkansas Game and Fish Commission* v. *Clark*, 192 Ark. 840, 92 S.W.2d 699 (1936), in which we held that a commission regulation applying to only one county was invalid. He said the regulation in question was invalid because it applied to less than the whole state and thus violated Amendment 14 and the prohibition of local or special legislation. To the *Clark* case we would add *Depree* v. *State*, 184 Ark. 1120, 44 S.W.2d 1097 (1932), and its similar holding. The appellant argues these cases show the reason for Amendment 35 limiting the commission to regulating entire zones rather than "local" areas.

The problem with the appellant's argument is that just the opposite can as easily be said. The *Clark* and *Dupree* decisions tied the hands of the commission, forcing its regulations to apply statewide despite the obvious variety among the streams, rivers, lakes and lands found in Arkansas. It is at least equally likely that the amendment, enacted in 1945, was passed to untie, or at least to loosen, the knot.

We are thus not persuaded by the appellant's argument that the commission may not make a zone of a single lake because of any prohibition to be found in Amendment 35. That leaves only the question whether the commission abused its discretion in doing so.

## 2. Abuse of discretion

Dr. Larry Aggus, a Fayetteville entomologist, testified that the commission's minute order making each identifiable body of water a separate zone for regulatory purposes was "state of the art fishery management in the United States," because each body of water may have different requirements as a "management unit" because of the varieties of fish in it and the nature of the lake

or stream. Mr. Kim Erickson, Chief of Fisheries of the Oklahoma Department of Wildlife Conservation, testified that, although they are not called "zones," the management units in Oklahoma are individual bodies of water, each of which may be subjected to special regulation. The testimony of these witnesses and of Mr. Henderson, an employee of the Arkansas Game and Fish Commission explaining the same regulatory need stated by the other witnesses, went unrebutted by the appellant.

We agree with the appellant that, given this approach, the commission could make every acre in Arkansas a separate zone. As long as the commission did so with demonstrable justification related to its constitutionally-defined purposes, the zones would not be illegal.

In *Arkansas State Game and Fish Commission* v. *Stanley*, 260 Ark. 176, 538 S.W.2d 533 (1976), we reviewed an injunction which had been issued to prevent the commission from harvesting timber at Bayou Meto. The chancellor's finding was that the commission's action was ultra vires, arbitrary, capricious, and unlawful. We reviewed the testimony and reversed. Some of the language of that opinion discussing the powers of the commission under Amendment 35 applies here:

> Judicial interpretation of these powers has been rather limited, but this court has, on occasion, been called upon to review various actions and has commented upon the extent of, and limits on, the constitutional grant. We have held that the Commission has a very broad discretion in determining how wildlife shall be conserved. *W. R. Wrape Stave Co.* v. *Arkansas State Game & Fish Comm'n*, 215 Ark. 229, 219 S.W.2d 948 [1949]; *Hampton* v. *Arkansas State Game & Fish Comm'n*, 218 Ark. 757, 238 S.W.2d 950 [1951]. In *Wrape*, we said that the Amendment is complete within itself and that it was intended by the Amendment to either provide or leave to the Commission, methods for attaining the ends enumerated. See also, *State* v. *Casey*, 225 Ark. 149, 279 S.W.2d 819 [1955]. We have said that the powers of the Commission are broad. *Arkansas State Game & Fish Comm'n* v. *Hornaday*, 219 Ark. 184, 242 S.W.2d 342 [1951]; *State* v. *Casey*, supra. [260 Ark. at 181-182, 538 S.W.2d at 535]

. . .

There may well be a difference of opinion about the propriety of the particular procedure adopted to accomplish the basic purposes of Amendment 35, but it certainly cannot be said that there is not respectable authority supportive of the approach being taken. In considering the matter we must remember that the commission is composed of members having knowledge of and interest in wildlife conservation. [260 Ark. at 189, 538 S.W.2d at 540.]

■ Amendment 35 does not define "zone." *See Shellnut* v. *Arkansas Game and Fish Commission,* opinion on rehearing, 222 Ark. at 32, 258 S.W.2d at 575 (1953). Given the broad authority the people have conferred on the commission, our previous recognition that the intent of Amendment 35 is to take advantage of the expertise of that body, and the evidence in this case that they are exercising that expertise in a way that is not only reasonable but also laudable in the opinion of professionals, we can hardly say there was an abuse of the commission's discretion when it made each body of water a separate zone.

One dissenting opinion in this case accuses the majority of not using common sense and of abandoning the constitution rather than interpreting it. No evidence in the record before us supports the conclusion that the designation of each body of water as a separate zone is lacking in common sense. The evidence before the court is that it makes not only common sense but also scientific sense to recognize that each body of water has different characteristics which may require different regulatory approaches. No authority whatever is cited in the dissenting opinion in support of the conclusion that we are abandoning rather than interpreting the constitution.

The other dissenting opinion also cites no authority for its apparent conclusion that a particular body of water cannot constitute a "zone." Reference is made to the *Shellnut* case, as being supportive of the majority's position, and to the *Clark* case, discussed in Part 1. above, as having been a precursor to Amendment 35 with a different suggestion of the impetus it may have given the authors of the amendment. We disagree that the decision in the case before us now will offer an insidious opportunity for rampant "spot" regulation or zoning. As stated at

the outset, the issue here is whether the appellee acted unconstitutionally in making Lake Maumelle a "zone." We find the appellee made the case required by *Arkansas Game and Fish Commission v. Stanley, supra*, that its decision was not arbitrary.

Affirmed.

HICKMAN and GLAZE, JJ., dissent.

PURTLE, J., not participating.

DARRELL HICKMAN, Justice, dissenting. We often state that a jury is not required to put aside its common sense in deciding a case. Neither are we.

The issue is not can the Game and Fish Commission make Lake Maumelle a separate "zone," it is, can the Game and Fish Commission defy the constitution and make every lake, river and stream a separate zone? That is not "dividing the state into zones" as provided in Section 8 of Amendment 35 of the Arkansas Constitution. Lakes are to be in zones, not zones in lakes. Our duty is not to determine the wisdom of the constitution, merely interpret it. The majority concedes that the commission could make a separate zone — presumably for both game and fish — of every acre in Arkansas. The majority is not interpreting the constitution, it is abandoning it.

What happened is this. The Game and Fish Commission decided that black bass under 15 inches could not be taken from Lake Maumelle. The appellant challenged this and proved the commission had not divided the state into zones for regulating fishing. (It had for regulating hunting and has been zoned for hunting since Amendment 35 was adopted.) So the appellant won. What did the commission do? It decided *every* lake and identifiable waterway would be a separate "zone" just so it could enforce its regulations regarding black bass on Lake Maumelle. What an arbitrary, bureaucratic decision. We don't know how many "zones" exist for regulating fishing. Evidently, the commission will, willy-nilly, make up the rules as time goes by. The constitution says that the commission shall have the authority to divide the state into zones and "no rule or regulations shall apply to less than a complete zone, except temporarily in case of extreme emergency." Evidently, this language is now meaningless.

Amendment 35 was adopted because of meddling by the legislators and the politicians with the game and fish laws and regulations. An example of the kind of nonsense that can occur is found in *Shellnut v. Arkansas Game & Fish Comm.*, 222 Ark. 25, 258 S.W.2d 570 (1953), where the commission created a zone including a landowner's property and then promptly excluded hunting from his property because he refused to lease his land to the commission.

This is not an environmental law case. The issue is interpretation of the constitution. All we have to decide is was the commission's act constitutional; not was this decision regarding black bass in Lake Maumelle right. Let us assume it was, but the way they decided to enforce that regulation violates the constitution.

If the commission had decided to try to divide the state in zones rather than react to a lawsuit in an arbitrary manner, we might have a different case. But they haven't tried.

The majority has simply given the Game and Fish Commission the authority to do what it pleases. If the people had wanted to grant unchecked power to the commission, it would have clearly said so. This kind of arbitrary action was anticipated and that was the reason for some of the language in Amendment 35. The majority has made Section 8 meaningless.

I respectfully dissent.

TOM GLAZE, Justice, dissenting. This court's opinion upon rehearing in *Shellnut v. Arkansas State Game & Fish Commission,* 222 Ark. 25, 258 S.W.2d 570 (1953) would seem to give support to the majority decision. In *Shellnut,* Justice George Rose Smith noted that Amendment 35 made no attempt to define the word zone, but said:

> To say the least, a zone must be of sufficient size to bear a reasonable relationship to the purpose for which the zone is declared to exist. If, for example, the zoning regulation is intended to further the propagation of deer, the constitution clearly means that the restricted area must be large enough for the accomplishment of that purpose.

222 Ark. at 34; 258 S.W.2d at 576.

The majority court in *Shellnut* stated that the Commission had failed to adopt a uniform regulation or zoning plan and held an entire 30,000-acre wildlife sanctuary involved there was not shown to constitute a zone. The three dissenting justices, Justice Robinson writing, opined the Commission should have been allowed to zone any area of the state and prohibit hunting in such zone, provided it had not acted in an arbitrary manner.

Here, the Commission has offered proof of its attempt to define zone, as that term applies to fisheries management. It did so by a minute order dated December 16, 1985, which in relevant part provides:

> It is ordered that fishery zones for sport and commercial fishing regulations shall be defined as identifiable lakes and impoundments which exhibits (sic) obvious lacustrine habitats; and any stream or river reach which exhibits an identifiable continuum of biological properties, and flow patterns with specific boundaries being determined by readily recognizable physical features as specified by the commission; and fishery zones shall be established for scientific application of regulation and management techniques to suit the particular needs of the fishery and such said zones shall be known by their popular or geographic names.

In addition to the foregoing order, the Commission offered certain expert testimony which tended to support the Commission's action to make each body of water, meeting its definition, a zone for fishery management purposes.

Again, the *Shellnut* court indicated it would no doubt presume the validity of the Commission's action if the Commission undertook to adopt a uniform regulation applying alike to all lands within the area. The court further stated once the Commission so acted, it would cast upon the aggrieved landowner the burden of showing that no zone is involved. In view of the *Shellnut* holding and the proof offered by the Commission in this case, one could surmise that the majority decision handed down today is correct. Nevertheless, I remain troubled by it.

I remain bothered, no doubt, in part, due to the Commission's manner and timing in issuing its minute order defining zone

and in re-promulgating its regulation pertaining to Lake Maumelle. Of course, both events occurred immediately after the court ruled the Commission's regulation of Lake Maumelle unconstitutional. My main concern, however, is whether the minute order defining "fishery zones" is of much use to the public's (or this court's) understanding of that term, especially when that term is so broadly defined and leaves solely to the Commission an almost unlimited discretion to specify, on a case-by-case basis, what is or is not a zone. To me, the so-called zoning plan adopted here does little to guide anyone, and, at least on its face, appears impossible for anyone to know where or how it will be applied.

Finally, I also have problems embracing the idea, as the majority suggests, that the Commission can make every acre in Arkansas a separate zone, so long as it is able to justify such an action. Of course, I have some difficulty in conceiving how such a situation might occur but doubt that the majority actually believes any such action by the Commission could be upheld. My broader concern emanates from the words of limitation employed in Amendment 35, and, when enacted, its framer's concern, I submit, had little to do with state-of-the-art fisheries management — not to say such an idea is neither important nor laudable.

Undoubtedly, Ark. Const. amend. 35, § 8, gives the Commission the exclusive authority to issue licenses and permits and to regulate the limits and manner of taking game and fish in this state. Nonetheless, clear language is expressed in Amendment 35 that places a proscription on the Commission in its regulation of game and fish and furbearing animals. That language provides:

> The Commission shall have the exclusive power and authority . . . to regulate bag limits and the manner of taking game and fish . . . *and shall have the authority to divide the state into zones and regulate seasons and manner of taking game and fish and furbearing animals therein, and fix penalties for violation. No rule or regulations shall apply to less than a complete zone, except temporarily in case of extreme emergency.* (Emphasis supplied.)

In reading the foregoing, I am of the opinion that the framer's mandate meant the Commission must "divide the state

into zones" for regulation purposes so as to avoid any possible arbitrary or capricious selection of a given area or county in the state in order to treat or regulate it differently than other closeby or similar areas in the state. Such interpretation, I think, is clearly borne out by the amendment's proscription that the Commission shall not apply any rule or regulation "to less than a complete zone, except temporarily in case of extreme emergency."

In view of the foregoing words of limitation, I ask, how can one avoid what appears to be a clear admonition against "spot-regulation", i.e., applying a regulation to less than a zone? The answer, of course, is how it was done in this case — instead of "dividing the state into zones," make each of the rivers, lakes, streams and other water bodies in the state a zone unto itself. Since we have now given credence to the Commission's labeling water bodies, zones, and equating that with "dividing the state into zones," this same theory would necessarily apply to the Commission's power to regulate game and furbearing animals. Thus, so long as the Commission could offer some rationale for its action, it can now label hundreds — maybe thousands — of land areas in the state a zone. In the instant case, the Commission's action was justified as being the "state of the art" in fisheries management.

As I have already said, we all are for "state of the art" fish and game management but that is a matter which is separate and apart from the clear dictates found in Amendment 35. As the appellant points out, the framers were wary of granting any power to single out landowners or limit areas and apply restrictions not generally shared. That same philosophy is embedded in Amendment 14 to the Arkansas Constitution, prohibiting special and local legislation. See *Arkansas Game & Fish Commission* v. *Clark*, 192 Ark. 840, 925 S.W.2d 699 (1936) (wherein the court held invalid as special legislation the Commission's attempt to enforce deer hunting regulations applicable only to Grant County).

My decision to disagree with the majority has been a difficult one, primarily, I think, because I understand how fish and game management has changed over the past forty-two years, since Amendment 35 was approved by the people of the state. Nevertheless, that is not the legal issue posed here and I have a difficult

time in reading the express language used in Amendment 35 to say it was a consideration when it was passed and is a controlling consideration now. Therefore, I respectfully dissent.

HICKMAN, J., joins in this dissent.