The Honorable Michael Lamoureux State Senator
208 Craigwood Circle Russellville, Arkansas 72801
Dear Senator Lamoureux:
You have requested my opinion concerning the White River Minimum Flow Project, which you report will "reallocate storage space in Bull Shoals and Norfolk lakes to provide minimum releases from the two dams, during times when hydropower is not being generated, to keep a steady release of cold water flowing for downstream trout."[1] You are concerned, specifically, regarding the Arkansas Game and Fish Commission's (AGFC or Commission) agreement to fund the total non-federal cost to relocate and modify lakeside facilities in both Missouri and Arkansas to provide the needed storage at both lakes.[2]
You express the belief that Amendment 35 to the Arkansas Constitution "would disallow AGFC from entering into such an agreement." You ask, specifically:
 1. Does use of AGFC funds to relocate or modify public and private lakeside facilities in Arkansas and Missouri for the U.S. Army Corps of Engineers Bull Shoals and Norfolk lakes meet the requirements of Amendment 35 of being expended for the control, management, restoration, conservation and regulation of the birds, fish and wildlife resources of the State? *Page 2 
 2. Does expending AGFC funds to relocate or modify public and private lakeside facilities on portions of Lakes Bull Shoals and Norfolk within the State of Missouri meet the Amendment 35 requirement of being expended for the control, management, restoration, conservation and regulation of the birds, fish and wildlife resources of the State?
 3. Does Amendment 35 require and-or "wildlife resources of the State" mean AGFC funds must be expended in the State of Arkansas?
RESPONSE
Resolution of your first two questions will turn on factual considerations that are outside the scope of an Attorney General opinion. This office has a policy of long standing to the effect that it will not make factual determinations in the context of rendering opinions, as it is not equipped to investigate and evaluate questions of fact. This opinion must therefore be limited to a review of some general law surrounding the power and duty of the AGFC, which may be of help in analyzing the particular agreement at issue. The answer to your third question is "no," in my opinion. I have found no support for this interpretation of Amendment 35.
DISCUSSION
Amendment 35 to the Arkansas Constitution plainly proscribes the redirection of AGFC funds to purposes other than those listed in the amendment:
 The fees, monies, or funds arising from all sources by the operation and transaction of the said Commission and from the application and administration of the laws and regulations pertaining to birds, game, fish and wildlife resources of the State and the sale of property used for said purposes shall be expended by the Commission for the control, management, restoration, conservation and regulation of the birds, fish and wildlife resources of the State, including the purchases or other acquisitions of property for said purposes and for *Page 3 
the administration of the laws pertaining thereto and for no other purposes. . . .[3]
Amendment 35's purposes are therefore clear. It is equally clear that the AGFC is the entity vested with the power and duty to accomplish these purposes:
 [t]he control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, [and] the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission. . . .[4]
It has been generally stated that the AGFC has broad discretion in determining how wildlife shall be conserved:
 The Commission has a wide discretion within which it may determine what the public interest demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations, which tend to promote the protection and conservation of the wildlife resources of the state, and which tend to promote the health, peace, morals, education, good order and welfare of the public is that the rules and regulations must reasonably tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution.[5]
It has also been held that Amendment 35 is "complete within itself"[6]
and that "it was the purpose of those who wrote this amendment to cover the whole subject *Page 4 
relating to the wildlife conservation and to provide or leave to the Game and Fish Commission methods of reaching those ends."[7]
The AGFC thus has extensive discretion in determining the use of AGFC funds; but as "trustee for the people,"[8] it must exercise its powers in a reasonable and just manner consistent with the purpose of conserving wildlife resources of the State. The case of Ark. StateGame Fish Comm'n. v. Stanley, supra at n. 3, indicates that the AGFC's action will be upheld if it is not ultra vires and not "arbitrary or capricious, unreasonable or wantonly injurious, in bad faith or an abuse of its discretion."[9] After reviewing the AGFC's records, taking testimony, and weighing the evidence, the Arkansas Supreme Court in Stanley upheld the action of the Commission in contracting for the cutting and removal of timber from the Bayou Meto Wildlife Management Area, concluding that it was an exercise of the discretion of that body in the control, management, restoration and conservation of game and wildlife resources of the State. The Court stated further that evidence of abuse of the AGFC's discretion "should be so clear as to be virtually beyond argument before the courts should declare it so. The constitutional amendment left to the Commission the adoption of methods to reach the desired ends."[10]
It becomes clear when reviewing the cases that the Arkansas Supreme Court will not substitute its judgment for that of the Commission, but rather will require a showing that the Commission's action was ultra vires or arbitrary or an abuse of its discretion before it will be concluded that the Commission has exceeded the limits of its powers.
It also bears noting with regard to your particular questions that the Court has specifically recognized the AGFC's power to "propagate, preserve, and protect fish in streams and lakes."[11] The agreement at issue was presumably entered toward this purpose. You have expressed concern regarding the benefits that will *Page 5 
accrue to Missouri sportsmen as a result of the expenditure of AGFC funds in Missouri. I must question the probative force of this concern, however, given the scope of the AGFC's constitutional authority. The Court has repeatedly emphasized the Commission's "broad discretion in determining how wildlife shall be conserved."[12]
Certainly, Amendment 35 requires that AGFC funds must be expended to protect and conserve the wildlife resources of Arkansas. But I have found no authority to suggest that this means AGFC funds must only be spent within the State of Arkansas for this purpose. Amendment 35 does not so state, nor has my research yielded any interpretive authority to this effect. Having found no such requirement in Amendment 35, I believe the pertinent question is whether the Commission abused its discretion in entering the agreement.[13]
The resolution of this question will turn on the particular surrounding facts and circumstances, while bearing in mind the Commission's considerable discretion in determining what is in the public interest in the matter of wildlife conservation. If it is demonstrated that the agreement is reasonably related to a legitimate Commission and public interest in protecting Arkansas wildlife resources, then I believe it will be upheld regardless of whether funds were expended out-of-state toward the endeavor.
The factual nature of the inquiry prevents me from offering a definitive opinion in response to your first two questions. I have stated, as have my predecessors, on occasions too numerous to cite, that the Attorney General is not empowered as a fact-finder in issuing opinions. The foregoing discussion will hopefully be of assistance, however, in addressing the matter.
The answer to your third question ("Does Amendment 35 require and-or "wildlife resources of the State" mean AGFC funds must be expended in the State of Arkansas?") is "no," in my opinion. As stated above, I have found no interpretive authority suggesting that AGFC funds must only be spent within the State of Arkansas. *Page 6 
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The lakes are managed by the Corps of Engineers and shared by Arkansas and Missouri.
[2] You report that the Corps estimates the non-federal cost of the project to be $18,103,000. You state that the Missouri Department of Conservation originally joined the AGFC to share the non-federal cost, but later dropped out when the Corps chose to split the lakes into stand-alone projects.
[3] Ark. Const. amend. 35, § 8 (emphasis added).
[4] Id. at § 1.
[5] Farris v. Ark. Game Fish Comm'n.,228 Ark. 776, 784, 310 S.W.2d 231 (1958). See also Ark. StateGame Fish Comm'n. v. Stanley,260 Ark. 176, 181, 538 S.W.2d 533 (1976), citing W.R. Wrape StaveCo. v. Ark. State Game and Fish Comm'n.,215 Ark. 229, 219 S.W.2d 948 (1949); Hampton v. Ark. Game 6 FishComm'n., 218 Ark. 757, 238 S.W.2d 950 (1951).
[6] W.R. Wrape Stave Co., 215 Ark. at 235.
[7] Wright v. Casey,225 Ark. 149, 152, 279 S.W.2d 819 (1955).
[8] Farris, supra, 228 Ark. at 782.
[9] 260 Ark. at 178.
[10] Id. at 190.
[11] Harris v. Brooks,225 Ark. 436, 444, 283 S.W.2d 129 (1955).
[12] Stanley, 260 Ark. at 181 (citing W.R. Wrape Stave Co. and Hampton, supra n. 3).
[13] Cf. Magruder v. Ark. Game Fish Comm'n,293 Ark. 39, 41, 732 S.W.2d 849 (1987) (finding no prohibition in Amendment 35 against making a single lake a regulatory zone, and declaring that this "leaves only the question whether the commission abused its discretion in doing so.")