The Honorable Denny Altes State Senator
8600 Moody Road Fort Smith, Arkansas 72903-6718 Dear Senator Altes:
This is my opinion on your questions about an Arkansas Game and Fish Commission regulation:
 1. In light of the Arkansas Supreme Court ruling of Arkansas Game and Fish Commission v. Murders (1997), does Amendment 35 of the Arkansas Constitution allow the Arkansas Game and Fish Commission the general power to regulate all "killing devices" in the Ozark National Forest, Buffalo National River and Wildlife Management Areas as they currently do per Arkansas Game and Fish Commission code 20.01?
 2. If the answer to Question 1 is "yes", would an Arkansas Supreme Court order be needed to keep this from happening again, or would a state constitutional amendment be required?
RESPONSE
In my opinion, Code § 20.01 is within the Commission's constitutional authority. The Arkansas courts could, of course, reach a different conclusion and invalidate the rule. Absent such a holding, a constitutional amendment could revoke the Commission's authority.
Question 1 — In light of the Arkansas Supreme Court ruling ofArkansas Game and Fish Commission v. Murders (1997),does Amendment 35 of the Arkansas Constitution allow the ArkansasGame and Fish Commission the general power *Page 2 to regulate all "killing devices" in the Ozark National Forest,Buffalo National River and Wildlife Management Areas as theycurrently do per Arkansas Game and Fish Commission code 20.01?
Amendment 35 created the Commission and vested in it
 [t]he control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, [and] the administration of the laws now and/or hereafter pertaining thereto. . . .
Ark. Const. amend. 35, § 1.
The Arkansas Supreme Court has described the Commission's
 power to make such rules and regulations as is deemed necessary to protect and conserve the wild life resources of the state. . . . The Commission has a wide discretion within which it may determine what the public interest demands, and what measures are necessary to secure and promote such requirements. The only limitation upon this power to formulate these rules and regulations, which tend to promote the protection and conservation of the wild life resources of the state, and which tend to promote the health, peace, morals, education, good order and welfare of the public is that the rules and regulations must reasonably tend to correct some evil, and promote some interest of the commonwealth, not violative of any direct or positive mandate of the constitution.
Farris v. Arkansas State Game Fish Comm'n,228 Ark. 776, 784, 310 S.W.2d 231 (1958).
A Commission action is invalid only if ultra vires, "arbitrary or capricious, unreasonable or wantonly injurious, [taken] in bad faith, or an abuse of . . . discretion. . . ."Arkansas State Game Fish Comm'n v. Stanley,260 Ark. 176, 178, 538 S.W.2d 533 (1976). "Evidence of abuse of . . . discretion should be so clear as to be virtually beyond argument before the courts should declare it so."Id. at 190. See also Chaffin v. Arkansas Game FishComm'n, 296 Ark. 431, 757 S.W.2d 950 (1988) *Page 3 
(Commission has broad discretion to make policy decisions relating to wildlife matters).
Even though the Commission's regulatory authority and discretion are broad, they are not unlimited, and Commission actions have occasionally been held invalid.
In Hampton v. Arkansas State Game Fish Commission,218 Ark. 757, 238 S.W.2d 950 (1951), the court held that the Commission could not condemn land for hunting use.
In Shellnut v. Arkansas State Game Fish Commission,222 Ark. 25, 258 S.W.2d 570 (1953), the court held that a Commission rule prohibiting all hunting on specified privately-owned land was a taking of property without compensation in violation of Ark. Const. art. 2, § 22.
In Farris, supra, the court held that where a valid Commission regulation prohibited fish farmers from selling game fish that were used in their farming operations, it was beyond the Commission's authority to apply to the fish farmers another rule providing that no part of a fish could go to waste.
Arkansas State Game Fish Commission v. Gill,260 Ark. 140, 538 S.W.2d 32 (1976), was practically identical toHampton, supra.
In Arkansas Game Fish Commission v. Murders,327 Ark. 426, 938 S.W.2d 854 (1997), the court invalidated a Commission regulation that established a presumption of hunting when a person on a public road was in possession of a loaded firearm during certain deer seasons. The court acknowledged the Commission's broad authority to regulate the state's wildlife resources, but held its authority not to extend to a rule that "regulate[s] the general possession of all firearms on city, county, state, or federally maintained roads or rights-of-way." Id. at 429. The court stated that the rule shifted the burden of proof so that a person engaged in "innocent and legitimate conduct" was, in essence, compelled to prove that he or she was not guilty of the prohibited act. Id. The court held that the part of the regulation challenged was unconstitutionally overbroad, "designed to punish conduct which the state may rightfully punish, but which includes within its sweep constitutionally protected conduct." Id.
The court recently discussed the limits of the Commission's powers, stating that "while the [Commission] is vested with thedirect control, management, *Page 4 
restoration, conservation, and regulation of wildlife, [it] does not have . . . exclusive authority. . . ." Arkansas Wildlife Fed'n v.Arkansas Soil Water Conservation Comm'n,366 Ark. 50, 57, 233 S.W.3d 615 (2006). Citing Murders and pointing out that the Commission's constitutional authority is expressly exclusive in only three narrow areas (licenses, bag limits, and manner of taking wildlife), the court stated that Amendment 35 does not give the Commission "authority to control, regulate, and manage all decisions regarding natural resources solely because those decisions might have some collateral impact on the state's wildlife or wildlife resources."Id. at 59. Thus the court upheld the Soil and Water Conservation Commission's participation in an extensive water project that could have significant collateral effects on fish and wildlife.
There are, of course, many reported cases in which Commission actions have been upheld. See, e.g., W. R. Wrape StaveCo. v. Arkansas State Game Fish Comm'n215 Ark. 229, 219 S.W.2d 948 (1949) (Commission could condemn land for lake project); State Game Fish Comm'n v. Hornaday,219 Ark. 184, 242 S.W.2d 342 (1951) (same); State ex rel.Wright v. Casey, 225 Ark. 149, 279 S.W.2d 819 (1955) (Commission could impose hunting dog license fee); Arkansas StateGame Fish Comm'n v. Eubank,256 Ark. 930, 512 S.W.2d 540 (1974) (Commission could kill fish in Commission-owned lake); Stanley, supra (Commission could harvest timber from WMA); Magruder v. Arkansas Game FishComm'n, 293 Ark. 39, 732 S.W.2d 849 (1987) (Commission could designate single lake as regulatory zone).[1]
The Commission rule you ask about, Code § 20.01, makes it unlawful "to . . . possess a killing device in any wildlife management area." There are several exceptions to the rule, including "[d]uring open seasons for wildlife" in a WMA. See Code § 20.01(1).[2] By definition, a WMA is land that is "owned or controlled by the Commission. . . ." Code § 20.00.
I believe a court would hold Code § 20.01 valid as being reasonably related to a legitimate Commission and public interest in reducing poaching in WMAs. It is reasonable to expect that a prohibition on the out-of-season possession of killing devices in WMAs would reduce illegal hunting's frequency and impact on the *Page 5 
Commission's wildlife conservation efforts in the WMAs. In my view, the Commission's constitutional authority to acquire, establish, control, and manage "sanctuaries, refuges, [and] reservations" implies a broad discretion to make rules, such as Code § 20.01, that it reasonably determines necessary and appropriate to conserve wildlife in the WMAs.
In my opinion, the Murders case is distinguishable and does not control your question. The court in Murders emphasized that the Commission rule amounted to general regulation of firearm possession on public roads that are controlled not by the Commission but by federal, state, or local governments, an activity the court characterized as constitutionally-protected conduct. Here, the Commission rule applies only in WMAs, which are by definition lands owned or controlled by the Commission itself. I believe the rule is within the Commission's constitutional regulatory authority.
Question 2 — If the answer to Question 1 is "yes", would anArkansas Supreme Court order be needed to keep this from happeningagain, or would a state constitutional amendment be required?
While it is my opinion, for the reasons explained above, that Code § 20.01 is a valid exercise of the Commission's authority, my opinion is not binding, and the courts have ample power to invalidate Code § 20.01 if they determine the rule to be beyond the Commission's authority or otherwise unlawful. See, e.g., Farris,supra, and Murders.
In the absence of such a court ruling, it is my opinion that only a constitutional amendment could divest the Commission of its regulatory authority. My conclusion is a truism arising from the fact that the Commission's regulatory authority is established by the constitution.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] This office has discussed Amendment 35 and the Commission's authority on several occasions. See, e.g., Op. Att'y Gen. 2008-155, 2004-332, 2004-279, and 2002-184.
[2] Your first question asserts that Code § 20.01 applies within the Ozark National Forest WMA. That area, however, is wholly excepted from the rule. See Code § 20.01(2).